IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) ERIK VERHALEN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. CIV-15-586-W |
| v. | ) | |
| | ) | |
| (1) MIDLAND FINANCIAL CO., | ) | |
| (2) RECORDS INVESTMENTS, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' ORIGINAL COMPLAINT
AND DEMAND FOR JURY TRIAL**

Plaintiff, ERIK VERHALEN, by way of complaint against Defendants, alleges the following:

**Nature of Action**

1.1 This jury action seeks redress for Defendants' violations of the laws of the United States in connection with the termination of Plaintiff's employment. The action specifically seeks to enforce rights created under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*., Oklahoma Anti-Discrimination Act ("OADA"), 21 O.S. 1101, *et. seq*. and Oklahoma common law. As redress for Defendants' violation of the ADEA, OADA and Oklahoma common law, Plaintiff prays for and demands declaratory, legal and equitable relief, including back pay, reinstatement or, in the alternative, front pay, liquidated damages, compensatory damages, punitive damages,

unpaid benefits and attorney's fees and costs in an amount which will be established at the trial of this cause.

## Jurisdiction and Venue

2.1    This Court has jurisdiction over Plaintiff's ADEA claims brought under federal law pursuant to 29 U.S.C. § 626(c) and 28 U.S.C. §§ 1331 and 2201.

2.2    This Court has pendent jurisdiction over the state law claims as the claim arose under the same set of facts as the federal statutory claim.

2.3    Venue is proper in this Court, pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3), because Defendant resides within the judicial district of this Court within the meaning of 28 U.S.C. § 1391(b)(1) & (c).

2.4    All conditions precedent to Plaintiffs' entitlement to relief in this action has been fulfilled and satisfied.  Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission for age discrimination.  On March 3, 2015 the EEOC issued a notice of right to sue to Plaintiff.  This suit is instituted within the 90-day period contained within the notice.

## Parties

3.1    Plaintiff is a male citizen of the United States and resident of Oklahoma County, Oklahoma.

3.2    Defendant Midland Financial Co. is a domestic corporation registered to do business in the State of Oklahoma.  Service of process may be made upon this Defendant through its registered agent:  David Morgan, 501 NW. Grand Blvd., Oklahoma City, OK 73118.

3.3     Defendant Records Investments, LLC, is a domestic corporation registered to do business in the State of Oklahoma.  Service of process may be made upon this Defendant through its registered agent:  David Morgan, 501 NW. Grand Blvd., Oklahoma City, OK  73118.

3.4     All Defendants maintain and operate out of the same principal office and utilize or share the same staff.  Plaintiff reported and was within the chain of command of Defendants.  Personnel decisions related to Plaintiff's termination were made by Defendants.  Decisions related to Plaintiff's employment and his claims were made by Defendants.  Defendants, collectively, are an integrated enterprise or "joint" employers or the "single" employers of Plaintiff.

## BACKGROUND

4.1     Plaintiff was born in 1959 and is 55 years old.

4.2     Plaintiff has been a pilot over 23 years with over 10,000 accident free hours of service. He has never had his professional license revoked or suspended nor issued any violations or accidents upon his professional licensure.

4.3     On or about April 2011 Defendants hired Plaintiff for the position of Corporate Pilot within Defendants' Aviation Department.  At his hire, Plaintiff became one of three pilots on staff.  He was the oldest staff pilot.

4.4     Defendants' aviation department consisted of 2 corporate Challenger jets.  Plaintiff has over 5,800 hours in the Challenger aircraft – the most of any staff pilot.

4.5     Plaintiff was usually assigned to fly Defendants' Chairman and/or his family to various locations within the United States and overseas.

4.6     Plaintiff reported directly to Rich Westmoreland, Chief Pilot and Director of Aviation.

4.7     Plaintiff always met or exceeded his performance standards. Defendants' Chairman and wife had personally expressed gratitude to Plaintiff after flights.

4.8     Defendants promoted Plaintiff to Safety Manager, Lead Pilot then Assistant Chief Pilot.  The only remaining promotion for Plaintiff was Chief Pilot, occupied by Mr. Westmoreland.

**Aviation Safety Errors Reported**

4.9     As Safety Manager within the aviation department, Plaintiff received and learned of complaints from staff pilots concerning piloting decisions or errors by Mr. Westmoreland, Chief Pilot.  Plaintiff personally survived piloting errors by Mr. Westmoreland during flights.  On two occasions, the aircraft automatically switched to "stick shaker" preventing Mr. Westmoreland's actions from stalling the aircraft and crashing.  This event is gross and glaring pilot error with potentially fatal results. [1]

4.10    Defendants never issued to Mr. Westmoreland any discipline for his piloting errors.

4.11    In Plaintiff's February 2, 2014 performance appraisal, completed by Mr. Westmoreland, Plaintiff met or exceeded all standards.

---

[1] The 2009 crash of the regional Continental aircraft in Buffalo, NY was the result of similar pilot error.

4.12    On or about February 10, 2014 Plaintiff, as Safety Manager, drafted and submitted to Mr. Westmoreland internal safety forms concerning aviation safety violations reported to or observed by Plaintiff.

4.13    Later, in mid-February 2014, Plaintiff, as Safety Manager, personally met with Mr. Westmoreland to discuss his aviation safety violations pursuant to aviation regulations, including FAA and NBAA policies.  These violations included Mr. Westmoreland's manipulation of the flight logbook to reduce piloting hours, his piloting the Challenger without an active rating, operating in excess of maximum weight by over fueling and his failure to remedy a previously reported aircraft wheel shimmy.

4.14    Defendants never formally respond to Plaintiff's complaints.

4.15    On or about March 14, 2014, Plaintiff, in his position of Safety Manager, met with Dana Reindl, Vice President of Records Investments, and reported to her the aviation safety violations committed within the department.

**Retaliation**

4.16    On March 27, 2014 Mr. Westmoreland and Ms. Reindl met with Plaintiff and issued: Employee Counseling alleging "unsatisfactory work performance" and insubordination from 2012; cut his salary; and removed him from Safety Manager.   Mr. Westmoreland failed to identify such deficiencies in Plaintiff's 2013 and February 2014 performance appraisals.

**Report of Age-based comments from Bigelow**

4.17    After Plaintiff's hire, Defendants hired Sam Bigelow as a Line Pilot with relative age of 33 years old.  He was replacing a retiring pilot.

4.18   While Mr. Bigelow was a Line Pilot he made derogatory comments to Plaintiff about Plaintiff's age.  He told him that he made too much money and need to move on so the younger pilots can make the money.  His ageist comments to Plaintiff included comments about his grey hair, heard him creaking when walking and too slow to figure out the flight management system.

4.19   On or about January 2014 Plaintiff reported to Mr. Westmoreland the inappropriate comments from Mr. Bigelow concerning his age. Mr. Westmoreland's response was that younger people think they are entitled to things.

4.20   Based upon information and belief, Mr. Bigelow was never counseled or disciplined by Defendants.

**Bigelow Replaces Plaintiff as Safety Manager**

4.21   Mr. Westmoreland demoted Plaintiff from and replaced the Safety Manager position with Sam Bigelow, a Line Pilot under the age of 40, with less experience, seniority, hours and training than Plaintiff.

**Reporting of Discrimination and Safety Violations**

4.22   In a meeting with Dana Reindl, Vice President, on April 14, 2014, lasting approximately 2 ½ hours, Plaintiff reported that his removal from Safety Manager and filling with a younger, less experienced and qualified individual was unfair and expressed his fear that he was being "pushed out" due to his age. He further reported specific safety aviation violations committed by Defendants with the jets and of retaliation from Mr. Westmoreland.

4.23   Ms. Reindl later emailed him a response finding no merit to his safety concerns and his retaliatory complaint.  Plaintiff sent to Ms. Reindl reminders of Defendants' aviation safety violations and retaliatory treatment from Mr. Westmoreland.

**Bigelow Promoted to Chief Pilot then Terminates Plaintiff**

4.24   A few weeks after Plaintiff's complaints of retaliation and aviation safety violations, Mr. Westmoreland separated from Defendants.

4.25   On or about June 15, 2014 Defendants promoted Mr. Bigelow to fill Mr. Westmoreland's position from Line Pilot to Chief Pilot and Director of Aviation.  As Assistant Chief Pilot, Plaintiff was next in line for the promotion, not Mr. Bigelow.

4.26   After Mr. Bigelow's hire, he hired a younger [under age of 40] pilot and immediately promoted him to Safety Manager.

4.27   Mr. Bigelow's relative age was 33, with substantially less seniority, experience and hours as pilot and in the Challenger aircraft than Plaintiff.  Based upon information belief, Mr. Bigelow did not have any aviation management experience.  Plaintiff had prior experience as chief pilot and aviation management experience.

4.28   Defendants did not consider or interview Plaintiff as a candidate for the Chief Pilot and Director of Aviation position.

4.29   Plaintiff had previously internally complained of derogatory ageist comments from Mr. Bigelow and of age discrimination in demotion before his promotion.  Mr. Bigelow previously expressed to Plaintiff that he desired younger pilots within the aviation department.  Plaintiff now reported directly to Mr. Bigelow.

**Bigelow Accuses Plaintiff of Pilot Error**

4.30    A few weeks after Mr. Bigelow's promotion, July 1, 2014, Plaintiff was called for a meeting with Mr. Bigelow, Chief Pilot, with Dana Lorenson, Human Resources.  Here, Plaintiff was criticized for not landing the jet in a storm over the Naples, Italy airport *weeks* earlier.  Plaintiff explained that he had put the jet in a "hold" and landed after the storm cleared the airport – a protocol required and within his discretion as the pilot in charge.

4.31    In this meeting Plaintiff complained of "age discrimination" in Mr. Bigelow's promotion over him. He expressed that Mr. Bigelow's promotion over him was due to his age in light of his superior qualifications, training, seniority and aviation management experience.  He reported that he believed that pilots of his age were being phased out and replaced by younger pilots [he was the only remaining pilot over 40]. Plaintiff was then suspended at the meeting.

4.32    The next day, Plaintiff was terminated as "not a good fit".

4.33    Based upon information and belief, Mr. Bigelow replaced Plaintiff with a pilot under the age of 40.

**COUNT I: Age Discrimination in Termination under ADEA and OADA**

5.1    Plaintiff incorporates and realleges, in full, paragraphs 1.1 through 4.33 of this Original Complaint.

5.2    At all times material to this cause of action, Defendants have continuously been and are an employer "engaged in an industry affecting commerce" within the meaning

of 29 U.S.C. §§ 630 (a), (b), (g) & (h), and has continuously employed and does employ twenty (20) or more employees within the meaning of 29 U.S.C. §§ 630 (b) & (f).

5.3   Plaintiff was an "employee" of Defendants and Defendants were Plaintiff's "employer", within the meaning of 29 U.S.C. § 630(f), at all relevant times.

5.4   Plaintiff's age was a motivating factor in Defendants' decision to: (1) demote him from Safety Manager, (2) formally discipline him (3) suspend his employment and (4) discharge his employment.  Defendants otherwise willfully, knowingly and intentionally discriminated against Plaintiff on the basis of his age made unlawful by the ADEA and OADA in his discharge.  By engaging in such conduct, Defendants violated, and continues to violate the ADEA.

5.5   In violating the ADEA and OADA, Defendants acted willfully within the meaning of 29 U.S.C. § 626(b) and the OADA.

5.6   As a direct and proximate result of Defendants' violations of the ADEA and OADA, Plaintiff has been damaged by the loss of his employment with Defendants and the loss of compensation, including wages, bonuses, commissions, health insurance and other employee benefits, he would have received as an employee of Defendants had he not been discharged in violation of the ADEA and OADA.

5.7   As a direct and proximate result of the violations of the ADEA and OADA alleged under this Count, Plaintiff has also suffered mental and emotional distress.

5.8   As a direct and proximate result of the violations of the ADEA and OADA alleged under this Count, Plaintiff has also suffered other pecuniary losses, the type and amounts of which will be established at the trial of this cause.

## COUNT II: Retaliation under ADEA and OADA

6.1     Plaintiff incorporates and realleges, in full, paragraphs 4.1 through 5.8 of this Original Complaint.

6.2     By Plaintiff holding the good faith belief that he was complaining/reporting of such conduct, Plaintiff was opposing discrimination made unlawful by the ADEA 29 U.S.C. § 623(d) and the OADA.  Plaintiff was therefore engaged in activity protected under Section 623(d) of the ADEA and the OADA.

6.3     Plaintiff's complaining and reporting age discrimination was a motivating factor in the discharge of his employment.  Defendants willfully, knowingly and intentionally discriminated against Plaintiff on the basis of his opposition to and complaints of age discrimination in his termination of employment.

6.4     By engaging in the aforementioned conduct, Defendants violated, and continue to violate Section 623(d) of the ADEA and the OADA, which makes it an unlawful employment practice for an employer to discriminate against any person because an employee opposing any practice made an unlawful employment practice by the ADEA and the OADA.

6.5     Defendants engaged in the conduct alleged under this Count with malice and reckless indifference to the protected rights of Plaintiff.

6.6     As a direct and proximate result of the violations of the ADEA and the OADA alleged under this Count, Plaintiff has been damaged by the loss of his employment and loss of compensation and benefits and promotions and other pecuniary

benefits he would have received as an employee had he not been discharged in violation of the ADEA and the OADA.

6.7     As a direct and proximate result of the violations of the ADEA and OADA alleged under this Count, Plaintiff has also suffered mental and emotional distress.

6.8     As a direct and proximate result of the violations of the ADEA alleged under this Count, Plaintiff has also suffered other pecuniary losses, the type and amounts of which will be established at the trial of this cause.

## COUNT III: Public Policy Exception

7.1     Plaintiff incorporates and realleges, in full, paragraphs 4.1 through 6.8 of this Original Complaint.

7.2     Plaintiff reported internally within Defendants' violations of regulations concerning air carrier safety under applicable federal regulations.

7.3     Plaintiff is protected from retaliation by Defendants under the Wendell H. Ford Aviation Investment Reform Act for the 21st Century (AIR 21), 49 U.S.C. Section 42121.

7.4     Plaintiff's removal from Safety Manager, formal write up, suspension and termination for internally reporting aviation safety violations violates Oklahoma public policy.

7.5     Plaintiff's claim for retaliation for reporting aviation safety violations under the AIR21 does not preempt Plaintiff's claim of public policy violation in his termination. *See Todd v. Frank's Tong Service, Inc.*, 784 P.2d 47 (1989)(Surface Transportation Act

anti-retaliation provision, 49 U.S.C. §31105, does not preempt Oklahoma *Burk* public policy claim for retaliatory termination for refusal to operate unsafe truck).

7.6 As a direct and proximate result of the violation of Oklahoma public policy, Plaintiff has been damaged by Defendants' discrimination and/or retaliation in loss of compensation, including salary, employee benefits, opportunities for promotion and advancement and other pecuniary benefits he would have received as an employee at Defendants after his termination of employment.

7.7 In wrongfully discharging Plaintiff, Defendants also acted with malice. Plaintiff is therefore entitled to punitive damages.

7.8 As a direct and proximate result of Defendants' violation of the Oklahoma public policy, Plaintiff has suffered other pecuniary losses, the type and amount of which will be established at trial.

7.9 As a direct and proximate result of Defendants' violation of the Oklahoma public policy, Plaintiff has suffered nonpecuniary losses, including emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

## Prayer for Relief

Plaintiff prays for and demands the following relief:

1. A judgment that Defendants have engaged in all of the conduct alleged in this Original Complaint, and that Defendants have, by engaging in such conduct, violated the ADEA, the OADA and Oklahoma common law;

2. An injunction prohibiting any further violation by Defendants of the ADEA, the OADA and Oklahoma common law;

3. A judgment against Defendants awarding Plaintiff an amount equal to the backpay, including salary, bonuses, retirement and pension benefits, lost bonus and other employee benefits, he would have received from his termination through the date of judgment, had he not been terminated by Defendants;

4. An order reinstating Plaintiff to the position, seniority and level of compensation, including salary, bonuses, retirement and pension benefits, and other employee benefits, he would have enjoyed had he not been terminated by Defendants, or, in the alternative, a judgment against Defendants awarding Plaintiff an amount equal to the front pay, including salary, bonuses, retirement and pension benefits, and other employee benefits, he would have received, from the date of judgment through the date he would have retired or resigned from Defendants, had he not been terminated by Defendants;

5. A judgment against Defendants awarding Plaintiff compensatory damages in an amount to be established at trial;

6. A judgment against Defendants awarding Plaintiff exemplary damages to punish and make an example of Defendants for its unlawful conduct;

7. A judgment against Defendants awarding Plaintiff liquidated damages in accordance with 29 U.S.C. § 626(b) and OADA;

8. A judgment awarding Plaintiff an amount equal to the costs of bringing this action, including a reasonable attorney fee;

9. A judgment awarding Plaintiff such other legal and equitable relief as may be appropriate, including prejudgment and postjudgment interest.

Respectfully submitted,

s/ Jeff A. Taylor
Jeff A. Taylor
State Bar No. 17210
The Offices at Deep Fork Creek
5613 N. Classen Blvd.
Oklahoma City, OK  73118
Telephone:  (405) 286-1600
Facsimile:   (405) 842-6132

ATTORNEY FOR PLAINTIFF

**DEMAND FOR JURY TRIAL**

In accordance with Fed.R.Civ.P. 38(b), Plaintiff demands a jury trial of all his claims.

s/Jeff Taylor
Jeff A. Taylor